THE STATE OF FLORIDA EX REL. RAILROAD COMMISSIONERS AND ATTORNEY GENERAL, *Relator*, v. W. S. BULLOCK, CIRCUIT JUDGE, ET AL., *Respondents*.

Opinion filed August 12, 1919.

Petition for Rehearing Denied October 30, 1919.

1. The operation of a common carrier railroad is a business so affected with a public interest that when once undertaken and begun it cannot be discontinued and the road so operated abandoned and authorized to be dismantled by a proceeding

in which the State and the public are not represented, when such discontinuance and dismantling has not been consented to by the State.

2.  A Circuit Court in this State has no jurisdiction in a suit brought by a trustee against a common carrier railroad company to foreclose a trust deed upon the properties of such railroad company given to the trustee to secure the payment of the indebtedness of the railroad company without the assent of the State to order the railroad dismantled, its properties sold and removed and its operation as a common carrier discontinued.

A case of original jurisdiction.

*Dozier A. DeVane,* for Appellant;

*Hocker & Martin, Rushmore, Bisbee & Stern and George C. Bedell,* for Appellee.

WEST, J.—Upon a suggestion and petition for a writ of prohibition a rule to show cause was issued by this court. It is made to appear that suit was brought in the Circuit Court of Marion County by William S. Hood, as Trustee, against the Ocklawaha Valley Railroad Company, a corporation. The object of the suit was to foreclose a certain trust deed given by the Railroad Company conveying all properties owned by it to said Trustee for the purpose of securing to Assets Realization Company, a croporation, the payment of certain indebtedness of said Railroad Company to said Assets Realization Company. The bill of complaint which is in the usual form was filed December 10th, 1917. On the following day the defendant filed its answer admitting the allegations of the bill and upon motion of solicitors for complainant

an order was made appointing a Receiver for all the properties of the defendant described in the trust deed. Thereafter both the bill and answer were amended in unimportant particulars and by agreement the cause was submitted, without testimony, upon bill and answer and certain affidavits in behalf of complainant. On December 24th, 1917, a final decree in favor of complainant was entered.

In the final decree it was ordered that the properties of the defendant covered by said trust deed "be sold on a legal sale day at public auction, at public outcry to the highest bidder, in front of the Court House door in said County of Marion, State of Florida, and at such sale the Master herein appointed is hereby instructed to first offer (1), all the property included herein to be held, used and operated as a common carrier of goods and passengers from Silver Springs, Florida, to Palatka, Florida, and if as much as $200,000.00 is bid under such first offering herein provided for, the Master will not offer the same for sale under the second offering herein provided for, otherwise he will immediately thereafter, on th same day and at the same place, (2) offer all of said property for the purpose of and with the privilege on the part of the purchaser of dismantling the same, and that unless the bid received under second offering herein provided for shall exceed by $100,000.00 the bid received under the first offering herein provided for, in the event any bid is made under the said first offering, then in that event it will be the duty of the said Master to accept the highest bid made under the first offering herein provided for, but if no bid is made the first offering, or the bid under the second offering herein provided exceeds by $100,000.00 the bid made under the first offering, then the said Mas-

ter shall accept the highest bid made under the second offering, and the said Master shall report his doings in this behalf to the court."

The Master was, by said decree, directed, upon making sale of said properties, to execute a deed therefor to the purchaser, pay the costs incurred in the suit, all taxes properly assessed against such properties, and out of the remainder of the proceeds of the sale to pay to the complainant as trustee the amount due by the defendant to Assets Realization Company.

Subsequently other proceedings were had in said cause not necessary to be recited here. The State by the Florida Railroad Commission from time to time during such proceedings asked leave to intervene and be made a party to said suit, but was not permitted to do so, and was not formally made a party until March 27th, 1919.

In the meantime and after having been by order of court for various reasons from time to time postponed, the sale of said property was made by the Special Master on February 3rd, 1919. At the sale there was no bid under subdivision one (1) of the quoted paragraph of the final decree for the property to be operated as a common carrier. There was a bid under subdivision two (2) of the quoted paragraph of the final decree for the property with the privilege of dismantling it and ceasing to operate the said railroad as a common carrier, which bid was accepted and the sale and proceedings of the Special Master reported to the court.

Upon exceptions to the Master's report and a motion for confirmation of the sale after an extended recital of the proceedings in the cause and at the request of counsel the court by its order dated May 5th, 1919, fixed a day when an order would be made confirming the sale and

directing the execution of a deed to the purchaser, and further directing that upon the consummation of the sale the railroad be dismantled and the Receiver discharged. The purpose in fixing a day for the making of such order, so it is recited, was to give opportunity to the Receiver and the Railroad Commission to take such further action in the matter as seemed to them to be necessary and proper.

On May 10th, 1919, two days before the day fixed by the court for the entry of its order confirming the sale and permitting the dismantling of the road, upon suggestion and petition to this court, a rule was issued as prayed requiring the Circuit Judge to show cause why a writ of prohibition should not issue forbidding him to enter an order in said cause confirming the sale of the property of said defendant Railroad Company as junk to be dismantled, and from authorizing or decreeing the dismantling, taking up or removing any of the rails or tracks of said carrier, or from exercising any further jurisdiction in said cause relating to the junking or dismantling of said property.

By demurrer to the suggestion and petition the question is presented of whether a Circuit Court in this State has jurisdiction in a suit in which the State is not a party brought by a Trustee against a common carrier railroad company to foreclose a trust deed upon the properties of such railroad company given to the trustee to secure the payment of the indebtedness of the railroad company and in such suit order the railroad dismantled, its properties sold and removed and its operation as a Common Carrier discontinued.

This question must be answered in the negative upon the theory that the operation of a Common Carrier rail-

road is a business so affected with a public interest that when once undertaken and begun it can not be discontinued and the road so operated dismantled and abandoned by a proceeding in which the State and the public are not represented. By the acceptance of its Charter from the State such a company is permitted to exercise certain rights not enjoyed by individuals. It is given certain of the attributes of sovereignty itself, such as the power of eminent domain. It likewise is charged with the performance of certain public duties, namely, the duties of a Common Carrier. While it is constructed by private capital and is primarily controlled by individual effort it is a public instrumentality subject in its operation to regulation by public authority. Accordingly therefore the public has such an interest in the operation of such a road that, when once undertaken, it may not be discontinued by a proceeding in which the State is not represented, when such discontinuance has not been consented to by the State. 22 R. C. L. p. 750; State v. Dodge City, M. & T. Ry. Co., 53 Kan. 377, 36 Pac. Rep. 747; Cates v. Boston & New York Air Line R. R. Co., 53 Conn. Rep. 333; People v. Colorado Title & Trust Co.,   Colo.  , 178 Pac. Rep. 6; Brooks-Scalon Co. v. Railroad Commissioners of Louisiana,   La.  , 81 South. Rep. 727.

In the case of State v. Dodge City, M. & T. Ry. Co., *supra*, the Supreme Court of Kansas in discussing a similar question, said: "Railroads, like all other public thoroughfares, are public instrumentalities. The power to construct and maintain railroads is granted to corporations for a public purpose. The right to exercise the very high attributes of sovereignty, the power of eminent domain, and of taxation to further the construction of railways could not be granted to aid a purely private enter-

prise. The railway corporation takes its franchises subject to the burden of a duty to the public to carry out the purposes of the charter. The road, when constructed, becomes a public instrumentality, and the roadbed, superstructure, and other permanent property of the corporation are dvoted to the public use. |From this use neither the corporation itself, nor any person, company, or corporation deriving its title by franchise, either at voluntary or judicial sale, can divert it without the assent of the State.| It matters not whether the enterprise, as an investment, be profitable or unprofitable. The property may not be destroyed without the sanction of that authority which brought it into existence. Without legislative sanction, railroads could not be constructed. When once constructed, they may only be destroyed with the sanction of the State.".

This we think is the true rule. In the instant case, as may be observed from the statement, the State was not made a party to the suit until after the decree of foreclosure had been entered and the sale of the property made, when the Railroad Commission was permitted to intervene and be made a party. There is no contention that the consent of the State to the discontinuance of the road had been secured. On the contrary, it is alleged in the suggestion and petition that, upon application by the Railroad Company to the Railroad Commission, consent to the discontinuance of operation of its road had been denied.

It follows that the portion of the decree of foreclosure authorizing the dismantling of the road was in excess of the jurisdiction of the court.

The demurrer to the suggestion and petition is overruled and the peremptory writ of prohibition will be issued, un-

less the respondent files a plea or answer within thirty days.

Taylor, Ellis and Whitfield, J. J., concur.

Browne, C. J., absent and not participating.

Whitfield, J., concurring.—A common carrier railroad company is a corporate entity with franchise rights and obligation, and its property is devoted to a public service which is continuous under the laws of the State. The franchise rights of the corporation may be forfeited to the State; but the corporation cannot lawfully dismantle its road-bed of ties and rail and withdraw the property that has been devoted to the public service without the acquiesence of the State in some manner prescribed by law.

While a court of equity may enforce a mortgage lien on the property of a railroad corporation by a sale of the property, the court has no authority to order or permit the track and other property of the company to be withdrawn or removed from the public service to which it was devoted, except as may be prescribed by statute; and there is no statute in this State giving such authority to the courts or to other tribunals.

Mortgage contracts cannot give to the courts a power not conferred by law. In this case the contract lien is upon the property of the railroad company as an operating entity charged with the public duty; and the lien can give no right to destroy the operating character of the property in which the public have an interest; nor can the right of the mortgagees be enforced except pursuant to law. If the mortgage lien contracted for is ineffectual to secure the indebtedness, the mortgagee cannot justly

complain since the lien was taken under the law govern-
ing the subject matter of the lien. See Barton v. Barbour,
104 U. S. 126, 135.

The court was without power to order a sale of the rail-
road company's track and property as junk, thereby de-
stroying the public use of the corporate property, and the
writ of prohibition should be made effective.