BULLOCK, JUDGE OF THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT OF THE STATE OF FLORIDA, ET AL. *v.* STATE OF FLORIDA UPON THE RELATION OF THE RAILROAD COMMISSION OF THE STATE OF FLORIDA ET AL.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF FLORIDA.

No. 262.   Argued December 6, 7, 1920.—Decided January 17, 1921.

1. The judgment of the state Supreme Court was reviewable in this case by certiorari and not by writ of error. P. 518.
2. Where a judgment of a state Supreme Court prohibiting proceedings in a lower court was essentially based on the denial of a substantive right claimed by a party, this court is not precluded from reviewing, on a constitutional ground, by the fact that the judgment was in terms based on a denial of the prohibited court's jurisdiction. P. 520.

3. Apart from statute or express contract, those who invest in a railroad, though built under a charter and the eminent domain power received from the State, are not bound to go on operating at a loss if there is no reasonable prospect of future profit; and their right to stop does not depend upon the consent of the State. P. 520.

4. Where a state Supreme Court prohibited a lower court, in foreclosing a railroad, from authorizing and confirming a sale with liberty to the purchaser to dismantle the railroad, basing its decision upon the ground that the State was not a party and that the dismantling could not be so authorized without the State's consent, *held*, that the prohibition could not affect the constitutional rights of the mortgagor, since the right to dismantle, as against the State, could not be conferred by a foreclosure decree in the State's absence, and would pass to the purchaser, if it existed, whether the decree so provided or not. P. 521.

5. Whether a State is bound by a foreclosure proceeding to which *it* voluntarily makes itself a party before final decree, is a local question, the decision of which this court will not review in a case from a state court. P. 522.

82 So. Rep. 866, affirmed.


The case is stated in the opinion.


*Mr. George C. Bedell* for petitioners:

The judgment and writ of prohibition under review deprive the mortgagee Hood of his property without due process of law, and deny to him the equal protection of the law, contrary to the Fourteenth Amendment. *Brooks-Scanlon Co.* v. *Railroad Commission of Louisiana*, 251 U. S. 396, 399.

See also *Munn* v. *Illinois*, 94 U. S. 113, 116; *Mississippi Railroad Commission* v. *Mobile & Ohio R. R. Co.*, 244 U. S. 388; *Northern Pacific Ry. Co.* v. *North Dakota*, 236 U. S. 585, 595; *Norfolk & Western Ry. Co.* v. *West Virginia*, 236 U. S. 605, 609, 614.

The court's finding that the railroad cannot be operated except at a loss is conclusive and has not been questioned by the Supreme Court of Florida.

Before such conclusion was reached, however, the State was not only given an opportunity to test that matter through the operation of the road for more than a year by a receiver of its own choice, but was given every opportunity to prove the contrary. It was formally made a party to this cause on March 27, 1919, but had been actively engaged in the litigation for more than a year prior thereto.

In the opinion rendered upon the demurrer to the suggestion in the prohibition case, something is said to the effect that the State was not made a party to the suit until after the decree of foreclosure had been entered and the sale of the property made, but when the court came to settle the judgment to be rendered in the case, its ruling was not based upon any matter of procedure, but squarely upon the authority of the Circuit Court, which was prohibited "from exercising any further jurisdiction in said cause relating to the junking of said property" and "from undertaking by decree, order or otherwise to authorize the dismantling of said railroad, or the taking up and selling of the rails therefrom." And this view has expression by the same court in the subsequent case of *Anderson* v. *Dent*, 85 So. Rep. 151.

Under state statutes and constitution, the trustee's rights are limited to the rights of a lienor, that is, to the proceeds of the mortgaged property, and do not extend to the *corpus*, and enforcement of the lien can only be sought by foreclosure in the Circuit Court. Denial to a trustee of the right to subject the proceeds of the property to his lien is a deprivation of the very substance of his right. *New York Trust Co.* v. *Portsmouth & Exeter St. Ry. Co.*, 192 Fed. Rep. 728; *Jack* v. *Williams*, 113 Fed. Rep. 823, affd. 145 Fed. Rep. 281; *Central Bank & Trust Corp.* v. *Cleveland*, 252 Fed. Rep. 530; *Iowa* v. *Old Colony Trust Co.*, 215 Fed. Rep. 307; *Brooks-Scanlon Co.* v. *Railroad Commission of Louisiana, supra.*

The Supreme Court of Florida has indicated no other means whereby a mortgagee can have relief than by foreclosure suit and the statutes make it clear that he must get his relief from the proceeds of the foreclosure sale or not at all. To deny him the right in the foreclosure case to have the property sold for the purpose of dismantling is to deny him the only redress that will permit him to subject all that is of any value to the lien of his mortgage. The statutes stand to-day precisely as they stood when the trust deed was made. *Butz* v. *Muscatine*, 8 Wall. 575. The holding of the Supreme Court of Florida affects the essential qualities of the plaintiff's lien. *The J. E. Rumbell*, 148 U. S. 1; *Green* v. *Biddle*, 8 Wheat. 76, 84; *Bronson* v. *Kinzie*, 1 How. 311; *Gantly's Lessee* v. *Ewing*, 3 How. 707; *Barnitz* v. *Beverly*, 163 U. S. 118; *Bradley* v. *Lightcap*, 195 U. S. 1.

The practical effect of the ruling of the court is to take from the plaintiff's security all that there is of any value in it that the property may be held for public use, and this is depriving plaintiff of his property without due process of law. *Brooks-Scanlon Co.* v. *Railroad Commission of Louisiana, supra; Ochoa* v. *Hernandez*, 230 U. S. 139, 161.

The effect of the judgment and writ of prohibition was to restrict the plaintiff's right to the sale of the property with this limitation upon its use: that it shall not be dismembered when its use means continuing loss. Under the decisions of this court that is confiscation. *Smyth* v. *Ames*, 169 U. S. 466; *Northern Pacific Ry. Co.* v. *North Dakota, supra; Norfolk & Western Ry. Co.* v. *West Virginia, supra.*

*Mr. Dozier A. De Vane* for respondents:

The authority of the State sustained by the Supreme Court of Florida neither deprives the trustee of his property without due process of law nor subjects private prop-

erty to public uses without compensation. The decision merely holds that an inferior court is without jurisdiction to order dismantling of a carrier's property to satisfy a creditor's lien taken upon property then charged with a public duty, where the State is not a party to such suit. If the mortgage lien contracted for is ineffectual to secure the indebtedness, the mortgagee can not justly complain, since the lien was taken under the law governing the subject-matter of the lien, *Barton* v. *Barbour*, 104 U. S. 126; and "there is no statute in this State giving such authority to the courts or to other tribunals." 82 So. Rep. 866.

This presents no question reviewable by this court.

The State has maintained throughout this proceeding that the trustee has no right to have determined in a foreclosure suit the question of dismantling of a carrier's property and that this was especially true where the State was not a party to the proceedings. The rights of the purchaser at the foreclosure proceedings are not involved in this case and can not be considered. Neither is the right of the owners of the property to discontinue operation and dismantle.

"Upon principle it would seem plain that railroad property once devoted and essential to public use, must remain pledged to that use so as to carry to full completion the purpose of its creation; and that this public right . . . is superior to the property rights of corporations, stockholders and bond-holders." And, "a corporation . . . has no right as against the State to abandon the enterprise." *Gates* v. *Boston & New York R. R. Co.*, 53 Connecticut, 333.

See also *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Central Transportation Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24.

This duty of a carrier is most frequently defined in the following language: "Such corporations may not by any

act of their own, without the consent of the State, disable themselves from performing the functions the undertaking of which was the consideration for the public grant." *Thomas* v. *Railroad Co., supra; King* v. *Severn & Wye R. R. Co.,* 2 Barn. & Ald. 646; and many other cases.

Persons in private business may abandon it at their whim or pleasure. Not so with a railroad. It is a public highway. It is created by the State for the public use. It exercises the State's great power of eminent domain for the public good. *Barton* v. *Barbour,* 104 U. S. 135; *Ellis* v. *Tampa Water Works Co.,* 57 Florida, 533; *Ellis* v. *Atlantic Coast Line R. R.,* 53 Florida, 650; *Gainesville* v. *Gainesville Gas & Electric Power Co.,* 65 Florida, 404.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a proceeding by the relators seeking a prohibition forbidding a State judge of a lower Court to confirm a sale of a railroad "for the purpose of and with the privilege on the part of the purchaser of dismantling the same" as authorized by a foreclosure decree. The trustee of the mortgage under foreclosure was made a party to the proceeding and demurred upon the ground that the prohibition would deprive him of his property without due process of law contrary to the Fourteenth Amendment of the Constitution of the United States. The Supreme Court of Florida granted the prohibition, 82 So. Rep. 866, and thereupon this defendant sued out a writ of error and filed a petition for a writ of certiorari from this Court. Action upon the latter was postponed to the hearing on the writ of error. Certiorari being the only remedy the petition is granted, as the case is deemed a proper one to be reviewed.

The road concerned is that of the Ocklawaha Valley Railroad Company. It succeeded by foreclosure of a

previous mortgage to a logging road, and gave the present
mortgage to Hood, one of the plaintiffs in error, in trust
for the bondholders.   The bonds are held by the Assets
Realization Company.   Before the present bill for fore-
closure was filed the Railroad Company had applied to
the Railroad Commission for leave to cease operations,
had been refused, and the State, by the Railroad Com-
mission, had obtained an injunction forbidding the dis-
mantling of the road and requiring it to go on.   It ceased
operations however on December 7, 1917.   On December
10, 1917, the bill to foreclose was filed.   On the same day
the State filed a bill in the same Court, ancillary to its
other bill, asking for a receiver to operate the road until
further order, and a few days later sought to have its bill
consolidated with the foreclosure suit.   This was denied
and the State's bill was dismissed.   The decree of fore-
closure complained of was entered on December 24, 1917,
but on January 22, 1918, in deference to the State's con-
tention that the road could be run at a profit, although
the State had not been admitted formally as a party,
H. S. Cummings was appointed a receiver, he being the
most available man and being able by his connections to
give the road a good deal of business in the way of carrying
lumber.   After nearly a year's trial the Court was satisfied
that the road could not go on and thereupon ordered a
sale which was made on February 3, 1919.   On March 27,
1919, the Court admitted the State as a party and in-
formed counsel that if it turned out, as the receiver and
State insisted, "that the road was operating so as to pay
expenses of operation and the taxes and had some reason-
able show for business the sale would not be confirmed."
On May 5, 1919, the Court entered an order finding that
the road was hopelessly insolvent and could not be oper-
ated so as to have any net income whatever but postpon-
ing confirmation of the sale until May 12, before which
time the proceedings for prohibition were begun.

: The foreclosure decree of December 24, 1917, provided for a first offer of the road to be used as a common carrier, but if less than $200,000 was bid, there was to be a second offer with the privilege of dismantling. If, however, the bid on the second offer did not exceed by $100,000 the bid under the first offer, if there was one, the bid under the first offer was to be accepted. The trustee for bond-holders was authorized to use the indebtedness of the company in bidding and to apply his bid, if accepted, to the same. There was no bid on the first offer and the Assets Realization Company bought the property under the second. The prohibition is against confirming the sale and against so much of the foreclosure decree as authorized the second offer or dismantling the road. The ground of decision was that in the absence of statute a railroad company has no right to divert its property to other uses without the consent of the State and that the lower Court had no jurisdiction to make the prohibited portion of the decree in a proceeding to which the State was not a party until after the decree had been made.

It is not questioned that the lower Court had jurisdiction of the foreclosure and it is not suggested that any statute forbids the decree that was made. The decision of the Court proceeds upon a doctrine as to the duty of the railroad company, again a duty not based upon statute, and although stated in terms of jurisdiction, depends entirely upon a determination of what the rights of the company are. If the company had the right to stop its operations and dismantle its road we do not understand that it is doubted that the decree might embody that right in its order of sale. If we are correct, the word jurisdiction must not prevent a further consideration of the case. *Kenney* v. *Supreme Lodge of the World, Loyal Order of Moose,* 252 U. S. 411, 414, 415.

Apart from statute or express contract people who have put their money into a railroad are not bound to go on

with it at a loss if there is no reasonable prospect of profitable operation in the future. *Brooks-Scanlon Co.* v. *Railroad Commission of Louisiana,* 251 U. S. 396. No implied contract that they will do so can be elicited from the mere fact that they have accepted a charter from the State and have been allowed to exercise the power of eminent domain. Suppose that a railroad company should find that its road was a failure, it could not make the State a party to a proceeding for leave to stop, and whether the State would proceed would be for the State to decide. The only remedy of the company would be to stop, and that it would have a right to do without the consent of the State if the facts were as supposed. Purchasers of the road by foreclosure would have the same right.

But the foreclosure was not a proceeding *in rem* and could confer no rights except those existing in the mortgagor. A purchaser at the sale would acquire all such right as the mortgagor had to stop operations, whatever words were used in the decree, and, whatever the words, would get no more. The prohibition excluding from the decree the words purporting to authorize dismantling the road did not cut down the future purchaser's rights, any more than did the presence of those words enlarge them. Therefore the action of the Supreme Court is not open to objection under the Constitution of the United States, although it may be that it hardly would have been taken if the authority to dismantle had not sounded more absolute than it could be in fact, considering the nature of the proceeding. Without previous statute or contract to compel the company to keep on at a loss would be an unconstitutional taking of its property. But the prohibition does not compel the company to keep on, it simply excludes a form of authority from the decree that gives the illusion of a power to turn the property to other uses that cannot be settled in that case.

As the State voluntarily made itself a party to the foreclosure suit before the decree went into effect, as indeed the decree never has, it might seem that the State ought to be bound in a way that otherwise it would not be. But if in a revisory proceeding the higher State Court says that the State should not be bound and that the decree was wrong in this particular, that is a local question with which we have nothing to do. The result is that although the State Court may have acted on questionable or erroneous postulates there is nothing in its action that calls for a reversal of its judgment.

> *Writ of Error dismissed.*
> *Writ of Certiorari granted.*
> *Judgment affirmed.*