GIBBONS, Circuit Judge,
dissenting:
The majority opinion poses as the issue in this case whether 11 U.S.C. § 554 (1982) “permitfs] the abandonment of property of the bankrupt estate in contravention of state and local environmental protection laws?” Maj. op., at 913. In focusing on this single issue, however, the majority fails to consider additional points of extreme relevance to this case.
State and local environmental protection laws simply do not address federal bankruptcy law interests, including whether and under what circumstances the trustee of a debtor’s estate must take possession of all property in the estate. After all, trustees are creatures of federal law. They are appointed not for the benefit of the world at large, but solely for the purpose of liquidating property for the benefit of creditors, a federal interest. See 11 U.S.C. § 704 (1982). Some state environmental protection laws, like those of New York, attempt to impose expenses on the debtor’s estate that would leave no equity to be liquidated. In this case, for example, it is undisputed that New York law would leave the debtor’s estate with no actual or potential equity in the Long Island City property. By forcing the trustee to take possession of property in which there is no equity, the court serves no interest that the bankruptcy laws address. By not confronting that reality, the majority opinion fails to resolve critical issues in this case: how can the trustee reach into the creditors’ pockets for the cost of the cleanup, and if he can, which creditor’s pocket?
The proper analysis must begin with the relevant statute and the question of the trustee’s right to abandon the property. Section 554 of title 11 states clearly:
(a) After notice and a hearing, the trustee may abandon any property of the estate that is burden some to the estate or that is of inconsequential value to the estate.
11 U.S.C. § 554(a) (1982). There is no legislative history suggesting that we may alter or amend that language. The intent is clear. The record here establishes that the property is burdensome and of inconsequential value to the estate. A finding by the bankruptcy court to that effect has not been challenged ■ on appeal. Thus, under federal law, the trustee may abandon the property.
This point is challenged, however, by the State and City of New York, who argue that such abandonment cannot be permitted when it would violate the public interest and federal, state and local environmental laws. Appellants cite for support a Fourth Circuit and a bankruptcy court case for the proposition that abandonment may be denied when such abandonment would threaten public health and safety and/or violate federal law. The cases presented by appellants are Ottenheimer v. Whitaker, 198 F.2d 289 (4th Cir.), aff'd 102 F.Supp. 913 (D.Md.1952), and In re Lewis Jones, 1 B.C.D. 277 (Bk.Ct.E.D.Pa.1974).
Neither of these opinions, however, is persuasive under the 1978 Bankruptcy Reform Act. Both substitute slogans about equity for an analysis of the purpose of bankruptcy proceedings. Both, moreover, were decided prior to the enactment of the Bankruptcy Reform Act of 1978, and its *924 codification in 11 U.S.C. § 554 (1982) of the express authority for trustees to decline to undertake responsibility for property which cannot benefit the estate. Thus there was no statutory provision permitting trustees to abandon burdensome property at the time of those decisions. Such an express statutory provision now exists. Moreover, Congress did not see fit to provide an exception to this statutory power, whether for the public interest or any other purpose, as it has in other areas. Compare 11 U.S.C. § 362(a) (1982) (exception to automatic stay); Penn Terra Ltd. v. Department of Environmental Resources, 733 F.2d 267, 274-79 (3d Cir.1984) (injunction to enforce compliance with state laws is not a money judgment, and is therefore not subject to § 362 stay) with 11 U.S.C. § 554 (1982). Thus Ottenheimer and Lewis Jones are not helpful.[1]
The majority opinion is also inconsistent with the Supreme Court’s recent decision in United States v. Security Industrial Bank, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). There the Supreme Court held that the Bankruptcy Act should not be construed to destroy the interests of creditors when a substantial question arises as to whether the Act constitutes a taking of property without just compensation. The holding in Security Industrial Bank is simply a corollary of the longstanding doctrine that we are obliged “first [to] ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided.” United States v. Security Industrial Bank, 103 S.Ct. 98 S.Ct. 866, 868, 55 L.Ed.2d 40 at 412 (quoting Lorillard v. Pons, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978) and Crowell v. Benson, 285 U.S. 22, 62 (1932)). Similarly, “in the absence of a clear expression of Congress’ intent ... [a court should] decline to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the’ takings clause.” Security Industrial Bank, 103 S.Ct. at 414 (quoting NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 507, 99 S.Ct. 1313, 1322, 59 L.Ed.2d 533 (1979)).
The Supreme Court has indicated that creditors cannot be forced to operate a business, no matter how vital to the public interest, at a loss. See Railroad Commission of Texas v. Eastern Texas Railroad Company, 264 U.S. 79, 85-86, 44 S.Ct. 247, 248-49, 68 L.Ed. 569 (1924); Brooks-Scanlon Co. v. Railroad Commission of Louisiana, 251 U.S. 396, 399, 40 S.Ct. 183, 184, 64 L.Ed. 323 (1920); see also Regional Railroad Reorganization Act Cases, 419 U.S. 102, 122, 95 S.Ct. 335, 348, 42 L.Ed.2d 320 (1974); Bullock v. Railroad Commission of Florida, 254 U.S. 513, 520-21, 41 S.Ct. 193, 194, 65 L.Ed. 380 (1921). In the Regional Railroad Reorganization Act Cases, the Supreme Court did not “balance” the interest of creditors against that of the public. See 419 U.S. at 122-36, 95 S.Ct. at 348-54. The Court upheld the Regional Railroad Reorganization Act only because there was an available remedy in the Tucker Act, 28 U.S.C. § 1491 (1982), for the operational losses which that Act imposed. 419 U.S. at 136, 95 S.Ct. at 354 New York does not suggest that its law provides an equivalent remedy. The name of its game *925 is transferring the cost of cleanup to secured and unsecured creditors of the debt- or, in this instance outside New York, who have no interest whatever in the Long Island City property, and who, on the record before us, were in no way responsible for placing the contaminated oil on that site.
Thus, the majority’s construction of the Act raises a substantial question under the taking clause of the fifth amendment.[2] The holding of Security Industrial Bank compels a construction of section 554 that avoids this difficult constitutional issue. Such a construction is available, for the plain language of that section permits abandonment in this case; moreover, there is no legislative history to that section providing any exceptions to the statute or expressing any intent contrary to abandonment by a trustee of property found to be burdensome or of inconsequential value. A fair reading of section 554 permits abandonment in this case and thus avoids the constitutional question presented by the taking clause.
The majority opinion deals with the taking problem in a footnote. Maj. op., at 922 n. 11. That footnote, however, puts the rabbit in the hat by concluding perfunctorily that the New York statutes at issue constitute a “regulation” rather than a “taking” of property.[3] That is not the analysis of Security Industrial Bank. The Supreme Court requires that we address whether a substantial question under the taking clause arises; the Regional Railroad Reorganization Act Cases raise such a question. We are therefore required to construe the Bankruptcy Act accordingly.
The majority opinion sidesteps a key issue by stating that “we need not ... reach the issue of the priority, if any, of New York’s claims.” Maj. op., at 923.[4] Yet, the record is unequivocal. The debtor’s estate has no equity whatever in the Long Island waste oil storage facility. Thus the necessary implication of the majority’s holding is that property situated elsewhere must be expended for the purpose of complying with the New York toxic waste laws. Whether that expenditure is justified because New York law imposes a lien or charge on property situated elsewhere or because New York law requires that the expenditures be treated as costs of administration under 11 U.S.C. §§ 503(b), 507(a) (1982), the outcome is the same, for the majority’s opinion cannot conceal the patent reality that the cost of cleaning the Long Island City site must come from someone’s pocket. Remanding without addressing the question of whose pocket is irresponsible.
*926 The majority’s reliance on 28 U.S.C. § 959(b) (1982) is off the mark. If the trustee, or any other court officer, undertook to operate the Long Island facility, that officer would be required to operate it in compliance with local police power regulations by virtue of section 959(b). But section 959(b) cannot be construed as imposing an obligation to operate any business or property. In proceedings for reorganization or liquidation a trustee will undertake to operate a business or property only when such operation can inure to the benefit of some party having an interest in the estate. Were section 959(b) to be construed otherwise it would violate the fifth amendment prohibition against taking without just compensation. Regional Railroad Reorganization Act Cases, 419 U.S. 102, 118, 125, 95 S.Ct. 335, 346, 349, 42 L.Ed.2d 320 (1974); see United States v. Security Industrial Bank, 459 U.S. 70, 103 S.Ct. 407, 411, 74 L.Ed.2d 235 (1982) (secured creditor’s rights in debtor’s assets are “property” subject to “taking”).[5]
The majority’s argument is not advanced by its observation that “[t]he supremacy clause does not require the suspension of New York’s hazardous waste disposal laws.” Maj. op., at 923. Those laws are not suspended by the district court’s disposition. They have operated so as to eliminate any interest that the debtor's estate might have had in the Long Island City plant. They may result in criminal prosecution of the persons actually responsible for placing the toxic substances on the site. See, e.g., N.Y.Envtl.Conserv.Law § 71-2721 (McKinney Supp.1982). Moreover, those laws do not by their terms give fair notice to secured and unsecured creditors of the debtor that they would become liable for the cost of cleanup merely by extending credit to a corporation which unknown to them should in the future violate the law. Nor do they give notice to a trustee in bankruptcy that he would, merely by virtue of his appointment, become responsible for undoing the effects of a debtor’s prior unlawful activities.
Without definitely resolving the question, the majority suggests that 11 U.S.C. § 503(b)(1)(A) (1982), dealing with allowable costs of administration, and 11 U.S.C. § 102(3) (1982), dealing with an expansive rule of construction, may authorize the imposition of cleanup costs on other creditors. Maj. op., at 923-924. The suggestion that the cleanup cost might be classified as a “preservation expense” of a property is preposterous. Upon abandonment, title to .the property revests in the bankrupt. Fiduciaries are not at liberty to “preserve” the property in which their cestui have no interest. The reference to the court’s “equitable” powers, Maj. op., at 921-922, assumes that the court has “equitable” power to compel the operation of a business at a loss in' the public interest. As discussed earlier, the taking clause of the fifth amendment, applicable to the states by virtue of the fourteenth, prevents the exercise of any such “equitable” power. Before the trustee may incur expenses of administration to which section 102(3) may apply, there must be an identifiable source of authority for making such expenditures. None exists.
Finally, the majority remands to the district court with no guidance about the critical issues in this case. That court has already determined that New York law does not and, in light of the supremacy clause, cannot compel a trustee in bankruptcy to undertake possession or opera *927 tion of a business from which the estate can derive no benefit. On remand the court will still be at a loss to determine how, consistent with the taking clause, the trustee can reach into the creditors’ pockets for the cost of cleanup, and if he can, which creditors’ pockets. The majority remands with no more than a hope that the-court can get money somewhere.
Since the record is clear that the debtor’s estate does not have any actual or potential equity in the Long Island City property, and New York has not pointed to any other specific property on which it has a valid lien for the cost of cleanup of that site, the district court did not err in authorizing abandonment. Certainly that order was not an abuse of discretion. Nowhere does the majority disclose what alternative course might have been pursued. I would affirm now, as we surely will have to affirm later, when the district court points to the obvious fact that there must be a source of funds before expenditures can be made.

. Both cases acknowledge that the rules regarding abandonment in their case were judge-made:
It seems obvious to us that a rule which is not provided by statute but built up by the courts to facilitate the administration and distribution of the assets of a bankrupt estate should not be extended so as to reach such an unreasonable and unjust result. The judge-made must give way when it comes into conflict with a statute enacted to ensure the safety of navigation...
Ottenheimer, 198 F.2d at 290; see Lewis 1 B.C.D. at 279; see also Missouri v. United States Bankruptcy Court, 647 F.2d 768, 778 n. 18 (8th Cir. 1981) (doubtful that trustee could be prevented from selling grain to liquidate assets even though state law requires license to do so); In re Adelphi Hospital Corp., Bank.L.Rep. (CCH) ¶ 66,882, at 76,856 (2d Cir.1978) (bankrupt hospital’s trustee can abandon medical records even though state law requires their maintenance); see generally In re Chicago Rapid Transit Co., 129 F.2d 1, 5 (7th Cir.), cert. denied, 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547 (1942) (prestatute case stating withdrawal of state power should be stated in Act).

. The "taking" concern has been raised previously:
[T]he public interest cannot demand the erosion of the bankrupt’s assets to the point of confiscating practically the entire estate. At some point the extent and degree of taking runs into the constitutional prohibition in the Fifth Amendment [on] the taking of private property for public use without just compensation.
In re New York, New Haven and Hartford Railroad Co., 330 F.Supp. 131, 147 (D.Conn.1971); see also H.R.Rep. No. 595, 95th Cong., 1st Sess. 423 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News, 5963, 6379:
Subsection (a) [11 U.S.C. § 1170(a)] permits the court to authorize the abandonment of a railroad line if the abandonment is consistent with the public interest and either in the best interest of the estate or essential to the formulation of a plan ... The authority to abandon or not to abandon lines of railroad is, of course, subject to the fifth amendment of the Constitution, which may in particular cases require abandonment in order not to erode a secured creditor’s interest in the debtor’s property even though the public interest dictates otherwise.

. In its taking analysis, the majority opinion characterizes the environmental protection laws as an example of "the state's regulatory power to promote the public good” (citing cases). Maj. op., typescript at n. 11. The cases cited, however, do not address the question of imposing an obligation on third parties. Thus the police power cases are irrelevant to the issue of an obligation on the part of innocent creditors to undertake compliance with the police power statutes.

. The majority opinion appears to refer to an affidavit stating that some parties with priority liens relinquished them in favor of a first lien sought by the State and City. See Affidavit of Nancy Stearns, December 22, 1982.

. There is further evidence of doubt as to whether section 959(b) applies to Chapter 7 proceedings. Professor Moore stated:
[Section] 959(b) applies only to the Receiver in his operation of property in his possession. It does not apply to the distribution of the estate, and does not require the federal receivership court to comply with state laws regulating the distribution of funds in the receivership ...
7 J. Moore & J. Lucas, Moore’s Federal Practice § 66.04(4), at 1913 (2d ed.1982). Moreover, although a trustee may be authorized to operate a business under section 721, such operation may occur only "for a limited period" and only "if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate.” 11 U.S.C. § 721 (1982) (emphasis supplied). Such authorization here clearly would not be in the best interests of the estate.