NORFOLK & WESTERN RAILWAY COMPANY *v.* PUBLIC SERVICE COMMISSION OF WEST VIRGINIA ET AL.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF WEST VIRGINIA.

No. 187.  Argued January 22, 1924.—Decided May 5, 1924.

1. A State constitutionally may require a railroad carrier to provide suitable facilities reasonably necessary for the removal from its premises of freight carried by it for its customers.  P. 74.
2. Facts *held* to justify an order of a state commission requiring a railroad company to construct and maintain a crossing for the use of vehicles to haul such freight across its tracks.  P. 72.
3. An order of this kind did not violate the constitutional rights of the carrier by requiring the shipper at whose instance it was made to supply a gate to the crossing, to be kept locked by him when the crossing was not in use, and to provide a watchman to give notice of approaching trains while the crossing was being used by him for transportation of goods across the tracks in vehicles; the carrier not being prevented thereby from permitting use of the crossing for other purposes or installing a watchman of its own.  P. 75.

91 W. Va. 414, affirmed.

ERROR to a judgment of the Supreme Court of Appeals of West Virginia sustaining an order of the Public Service

Commission, in proceedings instituted by the Railway Company to set it aside as repugnant to the due process and equal protection clauses of the Fourteenth Amendment.

*Mr. John H. Holt,* with whom *Mr. Lucian H. Cocke, Jr., Mr. Lucian H. Cocke* and *Mr. Theodore W. Reath* were on the briefs, for plaintiff in error.

*Mr. Randolph Bias,* for Followay, defendant in error. *Mr. Lafe Chafin* was also on the brief.

MR. JUSTICE BUTLER delivered the opinion of the Court.

John Followay, one of the defendants in error, a merchant at a village called Blackberry City in Mingo County, West Virginia, filed complaint with the Public Service Commission of that State, praying that the Norfolk & Western Railway Company, plaintiff in error, be required to furnish a suitable crossing and to provide reasonable facilities for the use of shippers at that place. After a hearing, at which much evidence was introduced, the commission made an order which directed the railway company to construct and maintain a roadway for vehicles across its tracks at McCarr Siding. It limited the use of the crossing to the transportation of freight consigned to the complainant and other shippers, and required that the entrance to the crossing at the north side of the track be closed by a gate to be furnished by complainant and to be by him kept locked, except when the crossing was being so used; and directed that, while the crossing was being used by complainant for the transportation of goods across the tracks in vehicles, he should provide a watchman to give notice of approaching trains.

The company instituted proceedings in the Supreme Court of Appeals to suspend and set aside the order, and

there contended that it was repugnant to the due process and equal protection clauses of the Fourteenth Amendment. The contention was overruled, and the order was affirmed. *Norfolk & Western Ry. Co.* v. *Public Service Commission,* 91 W. Va. 414. Plaintiff in error seeks to have the judgment reversed on the ground of such repugnancy.

It is provided by statute that every railroad company may be required by the commission to establish and maintain such suitable public facilities and conveniences as may be reasonable and just. § 4, c. 15–0, Barnes' Code, 1918; *Norfolk & Western Ry. Co.* v. *Public Service Commission, supra,* 419.

The facts may be briefly stated. At McCarr Siding, there are four parallel tracks,—an eastbound main line, a westbound main line, a track between these, and a branch line extending across the Tug River. There is also a spur track extending southeasterly from the main line tracks to the tipple of the Allburn Coal Corporation and intersecting the approach to the proposed crossing about 200 feet therefrom.

The railroad tracks are on the north bank of the Tug River which at this place is the boundary between West Virginia and Kentucky. The village adjoins the company's right of way on the north and is located on a bluff considerably higher than the railroad tracks. Its population is about 100. Complainant's store is on a hillside a short distance north of the tracks. The Allburn Coal Corporation owns a doubledecked bridge across the river almost directly opposite the store. The upper level of the bridge is used for transportation of coal, and the lower level is used for pedestrian and vehicular travel. Though privately owned, it has been used by the public for a number of years as a part of the traveled way between the village and the territory south of the river. By reason of a sharp curve in the tracks and a deep cut, the

view of the crossing is obstructed, so that enginemen on approaching trains can see it for only a short distance.

McCarr Siding was established for the accommodation of the Allburn Coal Company about 10 or 12 years prior to the filing of the complaint. The tariffs of the railway company and its shipping instructions state that the siding is a carload billing point. It is also a prepay station to which freight in carload and less than carload lots may be shipped, to be delivered at the risk of consignees. The coal company and complainant receive by far the larger part of the freight. The amount received by others is small. When the mines of the Allburn Coal Corporation are fully operated, eight or ten carloads of coal are loaded daily. Other outgoing shipments, consisting principally of boxes, containers and household goods, are also made. The siding is a flag station for three passenger trains, two eastbound and one westbound daily. For that purpose it serves about 1000 people living in the vicinity, including many on the Kentucky side of the river. From 10 to 30 people get on and off trains at McCarr daily. Mail for the village is carried by railroad and delivered at the siding.

Complainant has been engaged in business in the village for many years. He handles merchandise in substantial volume. His freight bill amounts to about $300 a month. The goods come in less than carload and in carload lots and are delivered by the company at the siding. Most of them are brought from the west. Less than carload lots are deposited by the company on the ground on the south side of the tracks opposite his place of business, and carloads are delivered at approximately the same place. It is necessary for him to move his freight across the four intervening tracks. No station facilities have ever been furnished at the siding, and the commission found that the company's failure to afford reasonable facilities for the removal of complainant's freight

from its premises causes him damage, delay and inconvenience.

Because of the danger attending the use of the crossing, the railway company, shortly before the commencement of these proceedings, planted posts about five feet apart for a distance of about 50 feet along the right of way on the north side of its tracks to obstruct the crossing and prevent its use for vehicular traffic. This compelled complainant to carry the freight consigned to him by hand across the tracks at a cost greatly in excess of the expense of hauling it in vehicles.

The State, in the exercise of its police power, directly or through an authorized commission, may require railroad carriers to provide reasonably adequate and suitable facilities for the convenience of the communities served by them. But its power to regulate is not unlimited. It may not unnecessarily or arbitrarily trammel or interfere with the operation and conduct of railroad properties and business. *Mississippi Railroad Commission* v. *Mobile & Ohio R. R. Co.*, 244 U. S. 388, 390, 391. The validity of regulatory measures may be challenged on the ground that they transgress the Constitution; and thereupon it becomes the duty of the court, in the light of the facts in the case, to determine whether the regulation is reasonable and valid or essentially unreasonable, arbitrary and void. *Wisconsin, Minnesota & Pacific R. R.* v. *Jacobson,* 179 U. S. 287, 297, 301; *Burns Baking Co.* v. *Bryan,* 264 U. S. 504. Railroad carriers may be compelled by state legislation to establish stations at proper places for the convenience of their patrons. *Minneapolis & St. Louis R. R. Co.* v. *Minnesota,* 193 U. S. 53, 63. Any measure promulgated by the State to require a railroad company to provide suitable facilities reasonably necessary for the removal from its premises of freight carried by it for its customers does not create a new duty or impose any unnecessary burden.

The facts in this case clearly show the need of some facilities at McCarr Siding for the use of the patrons of the railroad. The order directing the company to construct and maintain a crossing for the use of vehicles to haul the freight across the tracks is a light burden upon the carrier and cannot be said to be unreasonable and arbitrary. It need not be considered whether the company, in the interest of the safety of those using the crossing, lawfully might have been required to furnish the gate and provide the watchman.

To support its contention that the order is unconstitutional, the company asserts that the order takes from it and gives to complainant the control of the crossing; that it prevents the use of the crossing without the consent and participation of complainant, and compels the company to enter into an arrangement or agreement with complainant making him its agent to control the use of the crossing and to guard it while being used. These contentions are without merit. The order does not impair or interfere with the company's right to permit the crossing to be used for purposes other than those specified in the order or prevent the company from guarding the crossing by watchmen or otherwise as it sees fit. Manifestly the limitation upon the use of the crossing and the imposition of duties on the complainant in respect of the gate and the guarding of the crossing were for the benefit of the company. The effect of these provisions was to relieve the carrier of a part of the burden and expense of providing facilities deemed reasonable and necessary for the removal of freight consigned to complainant and others at the siding. We find nothing in the order that deprives the company of its property without due process of law or denies to it the equal protection of the laws.

*Judgment affirmed.*