## LEHIGH VALLEY R. CO. v. BOARD OF PUBLIC UTILITY COM'RS OF NEW JERSEY et al.

District Court, D. New Jersey. June 28, 1927.

Hobart & Minard, of Newark, N. J., for plaintiff.

John O. Bigelow, of Newark, N. J., John W. Queen, of Jersey City, N. J., and Clarence E. Case, of Somerville, N. J., for defendants.

Before DAVIS, Circuit Judge, and BODINE and RUNYON, District Judges.

BODINE, District Judge. This is an application for an interlocutory injunction to restrain the public utility commissioners of New Jersey from carrying into effect an order made April 26, 1927, directing the Lehigh Valley Railroad Company to eliminate a grade crossing on State Highway No. 16 at a place in the township of Hillsboro, Somerset county, where the highway now crosses the four-track roadbed of the railroad company. The railroad company does not contend that the public unility commissioners had no right to order the elimination of this crossing (conceding that it is a highly dangerous one), but the contention is that the plan adopted for the elimination is unreasonable, and that the board should have ordered the elimination according to the proposed plan of the railroad company.

▮ "The State, in the exercise of its police power, directly or through an authorized commission, may require railroad carriers to provide reasonably adequate and suitable facilities for the convenience of the communities served by them. But its power to regulate is not unlimited. It may not unnecessarily or arbitrarily trammel or interfere with the operation and conduct of railroad properties and business. Mississippi Railroad Commission v. Mobile & Ohio R. R. Co., 244 U. S. 388, 390, 391 [37 S. Ct. 602, 61 L. Ed. 1216]. The validity of regulatory measures may be challenged on the ground that they transgress the Constitution; and thereupon it becomes the duty of the court, in the light of the facts in the case, to determine whether the regulation is reasonable and valid or essentially unreasonable, arbitrary and void." Norfolk & W. R. Co. v. Public Service Commission, 265 U. S. 70, 74, 44 S. Ct. 439, 440 (68 L. Ed. 904).

▮ The court in determining what is reasonable does not substitute its own judgment for the determination of the commission, but does consider all the factors in the case. New York v. Public Service Commission, 269 U. S. 244, 46 S. Ct. 83, 70 L. Ed. 255.

▮ The plan of the railroad company calls for locating a new highway to the east of the present highway in a bow shape joining the present highway at a point a thousand feet distant in either direction from the existing line of the railroad. The bow would have three distinct curves, the greatest curve being 6 per cent. The plan of both parties calls for the closing of what is known as the Camp Lane Crossing, an unnecessary cross-

ing in the vicinity, and extending this by-road up to the proposed new crossing. The public utility commissioners' plan requires the expenditure of possibly $175,000 more than called for by the railroad plan. If, however, the cost of acquiring additional lands is taken into account, this amount would undoubtedly be considerably reduced, as found by the commission and Justice Parker.

The board's plan maintains the existing highway, in its existing straight course, a course followed for more than a century. A somewhat greater amount of support for the railroad is required, in that the railroad and the highway run obliquely to one another. The railroad's plan, by the incorporation of the three curves, provides for the undercut at something more nearly approaching a right angle, thereby lessening the cost for support of the roadbed.

The highway in question is an increasingly important artery of travel in this state. The railroad crosses the highway on an embankment eight feet higher than the general level of the highway. Automobiles passing the railroad track are obliged to ascend this embankment and cross the railroad at grade. The count shows that thousands of automobiles now daily pass. The railroad's plan provides for inserting in the highway three curves contrary to the declared intention of the Legislature to eliminate curves, and contrary to the general policy of railroads to eliminate curves wherever possible in their line of travel.

In the vicinity of the crossing is a public school. School children of tender age nearly always pass on foot. The public utility commissioners' plan provides for suitable footwalks under the railroad. Their decision is couched in exhaustive terms and was reached after careful consideration of all the evidence, after examining the place and hearing the testimony of all the interested parties.

The railroad company immediately applied to Mr. Justice Parker for a writ of certiorari with a stay. Justice Parker, after a full hearing, determined that the public utility commissioners had jurisdiction, and that their action was, in all respects, proper and a reasonable exercise of the power vested in them by the Legislature of the state. Justice Parker said: "The requirement of a straight road at such a place as this is essentially sound, and to turn a great State road at such a place from a straight line to a crooked one would be to court constant disaster."

. The railroad company then applied to the

Supreme Court in banc for a writ of certiorari. This application was denied. They now seek to have this court restrain the action of the public utility commissioners as an unreasonable exercise of the police power of the state, on the theory that the only reasonable exercise of the police power would be to convert this highway from a straight course into a crooked course with a maximum saving of not more than $175,000. This court is asked to say that it is unreasonable to secure to the traveling public a straight passage under a railroad right of way over an existing highway where such passage will cost the railroad company twice as much as another sort of crossing that will compel, for all time, the traveling public to go around three curves and a longer distance to arrive at the same place.

■■ The action of the public utility commissioners would seem to be most reasonable. The mere fact that they did not choose the cheapest method does not make their act unreasonable, when there are perfectly good reasons for the choice. The court is not obliged to choose between two methods. It is enough that the action ordered is reasonable.

Prior to the action of the public utility commissioners, the state highway board had considered changing the route of the state highway to meet the plans of the railroad company. No action was taken, however, beyond discussion; no contract was signed and the highway board requested initiation of the action taken by the public utility commissioners, and now under review.

The public utility commissioners, under section 5 of chapter 57 of the act of 1913 (P. L. 1913, p. 92), have power to proceed with respect to the elimination of any grade crossing. The mere fact that the railroad company and the state highway commission, for a period of time, discussed the elimination of the crossing, does not, in any way, interfere with the action taken by the public utility commissioners. It may also, under section 1 of the act of 1913, order the relocation of any public highway at a point where it crosses the railroad right of way.

In the case of Erie R. R. Co. v. Public Utility Com'rs, 254 U. S. 410, 41 S. Ct. 171, 65 L. Ed. 322, the power of the public utility commissioners to eliminate grade crossings was sustained by the Supreme Court, speaking through Mr. Justice Holmes, as follows: "If it reasonably can be said that safety requires the change it is for them to say whether they will insist upon it, and neither prospective bankruptcy nor engagement in interstate commerce can take away

this fundamental right of the *sovereign of the soil*."

■ The railroad contends that the Transportation Act of 1920 (49 USCA) has modified this decision, citing the Los Angeles Station Case, 264 U. S. 331, 44 E. Ct. 376, 68 L. Ed. 713. We do not, however, find that the Supreme Court said that the "unquestioned" police power to regulate grade crossings in the interest of public safety was in any wise affected by the Transportation Act. And since counsel for the railroad company in their brief say that, "if the Board had ordered a reasonable expenditure according to plan 'C' (the railroad plan), the points we now present would not be well founded," it seems unnecessary to further consider the points raised with respect to the Transportation Act. Certainly, a fair return upon railroad property was never intended to be secured at the peril of the public using the highways of a state.

The injunction should be denied, with costs.