## WESTERN GRAIN CO. v. ST. LOUIS–SAN FRANCISCO RY. CO.

No. 6349.

Circuit Court of Appeals, Fifth Circuit.

Feb. 13, 1932.

Francis A. Brogan and Alfred G. Ellick, both of Omaha, Neb., and J. P. Mudd, of Birmingham, Ala., for appellant.

Jelks H. Cabaniss and Jos. F. Johnston, both of Birmingham, Ala., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This suit was filed to recover freight undercharges claimed to be due because of the application of a nonexistent and therefore illegal tariff to various shipments of grain from points in Nebraska to Birmingham, Ala. These shipments were consigned by the Updike Grain Corporation to itself, order notify Western Grain Company, Birmingham, pursuant to a contract of sale between it and the Western Grain Company on a basis delivered Birmingham. The bills of lading attached to

drafts, drawn on Western Grain Company, for the amount of the agreed purchase price less freight charges stipulated in the bills were duly presented to that company. The freight charges were fixed by applying to the shipments the Vicksburg-Mississippi rate prescribed in C. B. & Q. tariff 1218K. This tariff fixed the freight to be paid to the C. B. & Q. and named participating carriers, including the St. Louis-San Francisco Railway Company, from Randolph, Neb., to Vicksburg, Miss. It provided that such shipments might move over any one of several routes as follows: Routes—116. It provided further that "rates * * * Vicksburg * * * will also apply to directly intermediate points on the St. Louis S. F. Ry. * * *" Route 116 was described in the tariff as "via St. Louis and thence by the St. L. & S. F."

The St. Louis-San Francisco rails do not reach Vicksburg; they stop at Birmingham. In order to route a shipment by its lines to Vicksburg there must be added to the tariff what is not there "and lines beyond." Birmingham is located in what is known as Southeast territory. C. B. & Q. tariff 1218K on its cover states that it names rates from Nebraska points to Metropolis, etc. All of these points are in Mississippi Valley territory. A shipment consigned to Vicksburg via the St. L. & S. F. would travel over an unreasonably circuitous route. It would first swing east to Birmingham, where the Frisco lines end, and then it would be picked up and carried west again over the Alabama & Great Southern to Meridian, Miss., and the Alabama & Vicksburg to Vicksburg.

Appellants, apprehensive, because of the facts above set out, that the tariff applied might be later claimed to be nonexistent and that it might be subjected to claims for undercharge, at first refused to pay the charges and take the shipment. Fortified by the assurances of the local cashier of the carrier that the freight charges were correctly set forth in the bills of lading, and induced by his agreement that if the appellant would pay the drafts, accept the shipments and pay the stipulated freight charges, the carrier would not pursue or look to it for any additional freight charges, it accepted the shipments and paid the drafts and freight bills.

What appellant apprehended and tried to contract against has come to pass; the carrier is not only looking to, it is pursuing it for, undercharges. This suit asserts against it that the freight charges which it paid were not the lawful freight charges and demands of it the excess of the amount due under the lawful tariff over the amount which it has paid. Appellant opposes to the claim the assurances and agreements upon which it paid the freight. The trial court found that the tariff attempted to be applied was not applicable. That the agreement of appellee's cashier that appellant would not be looked to for undercharges, if the act of appellee, was in violation of the law and void, and that appellant, having taken the freight, is liable for and must pay all legal charges thereon.

These findings are assailed here as error, appellant insisting that tariff 1218K was lawfully applied to the shipments, and that in any event it may not be compelled to pay more, because the only privity between it and appellee is founded on the contract under which it took the goods, and appellee may not, more than any other contractor in a suit on a contract, recover contrary to its terms.

The precise question of the correct tariff to be applied on grain shipments from Nebraska points to Birmingham has been determined adversely to appellant's contention in a suit between its consignor and appellee, involving other similar shipments. Updike Grain Corp. v. St. Louis & S. F. Ry. Co. (C. C. A.) 52 F.(2d) 94. We agree with the disposition there made of it.

While it is true enough that where two tariffs are applicable, a shipper is entitled to the more favorable one, Am. Ry. Express Co. v. Price (C. C. A.) 54 F.(2d) 67; United States v. Gulf Ref. Co., 268 U. S. 543, 45 S. Ct. 597, 69 L. Ed. 1082; Galveston H. & S. A. R. Co. v. Lykes (D. C.) 294 F. 968, that tariffs must be applied as written and their effect may not be avoided upon the claim of mistake, Magnolia Prov. Co. v. T. & N. O. R. Co. (D. C.) 20 F.(2d) 384, 385, affirmed (C. C. A.) 26 F.(2d) 72, it is also true that there must be an actual tariff in existence, and a shipper may not by his own piecing, create one. Further, tariffs having as they do the effect of law, the language in them must be construed fairly and reasonably, in accordance with the meaning of the words used, and not distorted or extended by forced or strained construction. So construed, we think it plain that in the absence from the tariff of the provision "and lines beyond" it cannot be considered that it was intended to promulgate a rate over the circuitous route claimed with the unreasonable consequences of making Birmingham, a point in Southeastern territory, an intermediate point between points in Nebraska and Vicksburg.

The second contention we think no better taken. Its fallacy resides in the view that

the obligation of a receiver of freight springs from the circumstances, or the contract under which he takes it. This is not the law. The obligation springs from the fact that since the law peremptorily fixes as charges to be exacted for the carriage of freight those fixed in the applicable tariff, no more and no less, no one may free the goods of that lien unless he discharges not what may appear to be, or be asserted to be, but what actually is the amount due thereon, which amount he and the carriers are conclusively presumed to know. Pittsburgh, C., C. & St. L. R. Co. v. Fink, 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. 1151; Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U. S. 59, 44 S. Ct. 441, 444, 68 L. Ed. 900; Dare v. New York Central Ry. Co. (C. C. A.) 20 F.(2d) 379; Southern Pacific Co. v. Potter (C. C. A.) 26 F.(2d) 796; St. Louis-San Francisco R. Co. v. Republic Box Co. (D. C.) 12 F.(2d) 441; Great Northern R. Co. v. Hyder (D. C.) 279 F. 783, 784; Galveston, H. & S. A. R. Co. v. Lykes (D. C.) 294 F. 968, 973; Western & Atl. Ry. Co. v. Underwood (D. C.) 281 F. 891.

This is not a case like St. Louis-S. F. R. Co. v. Republic Box Co. (D. C.) 12 F.(2d) 441; Houston & T. C. R. Co. v. Lee County Produce Co. (D. C.) 14 F.(2d) 145; Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U. S. 70, 44 S. Ct. 441, 68 L. Ed. 900. There, after the goods had been delivered, the court in each case refused, in the particular circumstances of each case, to permit the company to hold the consignor liable, declaring that under the rule of the Fink Case, "If a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges, whether they are demanded at the time of the delivery, or not until later. His liability satisfies the requirements of the Interstate Commerce Act." Louisville & N. R. Co. v. Central Iron & Coal Co., supra. This is the converse of those cases.

Here it is sought to maintain the exactly opposite contention, that a carrier may deliver goods free from the lien which the law fixes, and taking from the receiver, the owner of the goods by contract of purchase, less than the freight due, may release him from the liability which the law peremptorily imposes on him.

We do not decide, for the case is not presented here, that a carrier, a consignor, and a receiver of goods may not make an agreement that the receiver will not be looked to primarily for the freight, but only secondarily after other remedies have been exhausted by the carrier. Nor, for the same reason, do we decide whether, as queried in Dare v. N. Y. Central R. Co. (C. C. A.) 20 F.(2d) 379, an agreement to relieve the receiver might lawfully be made upon condition of substituting for his obligation that of another, in such form that the new debtor would legally be bound to the carrier for all freight due. Here is presented without involvement or complication of any kind, the simple question whether a purchaser of freight, shipped to him under shipper's order, notify, bills of lading, may, paying less than is due, discharge the freight of the carrier's lien for the lawful charges due thereon without himself becoming liable therefor, by the simple device of demanding an assurance from the carrier's local agent that the charges they claim are all of the charges lawfully due, and that in no event will he be pursued or called upon to pay an undercharge claim.

A more naive method than this of doing away with the prohibitions of laws designed to prevent railroads from carrying freight for one on better terms than for another, would be hard to imagine. It would be difficult to institute one more fraught with confusion. If the carrier and receiver may, by special agreement, fix the amount for which the carrier holds a lien on the carried goods, and, having done so, the goods may be discharged of that legal lien and the receiver take the goods free from further claim, the result will be in some cases that the carrier will be prevented from recovering against the shipper (Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U. S. 70, 44 S. Ct. 441, 68 L. Ed. 900; Houston & T. C. R. Co. v. Lee County Produce Co.; St. Louis-San Francisco R. Co. v. Republic Box Co., supra); in others, that the shipper will be unjustly, though lawfully, compelled to pay, but in all confusion.

The law stands otherwise. The bill of lading in this case provides: "Except in those instances where it may lawfully be authorized to do so, no carrier by railroad shall deliver or relinquish possession at destination * * * the property covered by this bill of lading until all tariff rates and charges thereon have been paid." This is but a statement of the law. This is not a case where one having no beneficial title to the property, has protected himself against liability under the Act of March 4, 1927, c. 510, § 1, 44 Stat. 1447, 49 USCA § 3 (2). This is a case of one having as purchaser a beneficial interest in the property. By no device, contract, or arrangement of the kind in question

here, may such a one receive and appropriate goods, charged with a lien to secure more freight than he pays, freeing them from that lien and himself from responsibility for the full freight due.

The judgment is affirmed.