## ATLANTIC BRIDGE CO., Inc., v. ATLANTIC COAST LINE R. CO. et al.[*]

### No. 3606–J.

District Court, S. D. Florida, Jacksonville Division.

Feb. 25, 1932.

[*]Judgment affirmed 57 F.(2d) 634.

Thomas M. Woodward, of Washington, D. C., and F. C. Hillyer and Julian E. Fant, both of Jacksonville, Fla., for plaintiff.

Robert H. Anderson, Knight, Adair, Cooper & Osborne, and Doggett, Christie & Doggett, all of Jacksonville, Fla., for defendants.

STRUM, District Judge.

This is an action at law to enforce an order of the Interstate Commerce Commission awarding plaintiff reparation for sums collected from plaintiff by the defendants for freight shipments, which sums plaintiff asserts, and defendants deny, are overcharges. Atlantic Bridge Co. v. A. C. L. R. Co. et al., 159 I. C. C. 287. See 49 USCA § 16 (2).

The only issue in the case is as to which of two freight tariffs applies to the shipments under consideration.

The undisputed evidence establishes that in October, 1926, the plaintiff shipped from points in North Carolina to Pompano, Fla., south of Jacksonville, two carloads of freight. The first car contained a crane and hoisting engine. The second contained a device called a "whirley," which is an apparatus combining a steam engine and a hoist with a projecting arm which may be swung from side to side, used primarily for handling heavy materials.

As there was no through rate then prescribed for such articles, the rate charged was determined by combining the rate in effect from the North Carolina points to Jacksonville, with the rate asserted by the carriers to be the applicable rate from Jacksonville south to Pompano, Fla. The shipments moved via Atlantic Coast Line Railroad and Southern Railway from the points of origin in North Carolina, to Jacksonville, and thence to destination by Florida East Coast Railway. The rate in dispute is that applied from Jacksonville to Pompano, Fla., it being conceded that the appropriate rate was applied from the points of origin to Jacksonville.

There was in effect at the time Southern Classification No. 47, which was embraced in Consolidated Classification No. 4, the latter prescribing "Official," "Southern" and "Western" ratings. Of these, we are here concerned only with the Southern rating.

There was also in effect Exception No. 4, hereinafter referred to as the "Exception," which constituted an exception to the Southern Classification. The Exception is applicable between Jacksonville and local points in Florida upon the articles therein specified.

On page 37 of the Consolidated Classification appears a title "Machinery and Machines," under which are listed by name many different kinds of machinery, but none of which items specifically describe by name the articles here under consideration. Some of these items are assigned a class six rating in the Southern Classification, and some are assigned other ratings.

The Southern Classification, as shown on page 147 of the Consolidated Classification, also contains a title "Cranes or Derricks," under which are listed by name many kinds of cranes. Item No. 11 of this title is "Cranes or Derricks, N. O. I. B. N. (not otherwise indexed by name) * * *. loose or in packages, C. L. Minimum," which are assigned a class six rating in the Southern Classification. The articles here under consideration are more specifically described by the latter designation, and should be charged for at the class 6 rate, if the Southern Classification is applicable, south of Jacksonville, to these articles.

In the Exception, however, applying between Jacksonville and local Florida points, appears the title, item No. 16, "Machinery and Machines, C. L., rated sixth class in Southern Classification," to which is assigned a class N rating, which is lower than the class 6 rate. Plaintiff was not given the benefit of the class N rate south of Jacksonville, but was charged for the entire transit, from origin to destination, the class 6 rate prescribed for "Cranes or Derricks, N. O. I. B. N.," as shown in the Southern Classification appearing as item No. 11 on page 147 of the Consolidated Classification.

Plaintiff contends that it was entitled to the class N rate from Jacksonville to Pompano. The Interstate Commerce Commission sustained that contention, and awarded reparation for the difference between the class 6 and the class N rates on that portion of the transit from Jacksonville south to Pompano, which the carriers have not paid.

At the conclusion of all the evidence, all parties moved for a directed verdict.

The sole issue is whether the class 6 rate of the Southern Classification applies to these shipments from Jacksonville to Pompano, or whether the class N rate of the Exception applies. That question depends wholly upon an interpretation of the written words of the tariffs—a question of law. Standard Oil Co. v. U. S., 283 U. S. 235, 51 S. Ct. 429, 75 L. Ed. 999; Pillsbury Flour Mills Co. v. Great Northern Ry. (C. C. A.) 25 F.(2d) 66. As the facts are not in dispute, a verdict should be directed for the appropriate party.

Upon the principle that where the article shipped is included in more than one tariff designation, that which is more specific will be held applicable, the carriers contend that the Exception does not apply to the articles under consideration, because those articles, while comprehended by the title "Machinery and Machines," are more specifically described by the title "Cranes or Derricks, N. O. I. B. N.," in the Southern Classification, and being within such specific designation of "Cranes or Derricks" in the Southern Classification, they are not affected by the title "Machinery and Machines" in the Exception. The carriers assert that the title "Machinery and Machines" in the Exception applies only to articles appearing under that title in the Southern Classification, and that articles described in other specific titles in the Southern Classification would not be affected by the Exception even though such latter articles are in fact "machines" within the generic meaning of that term.

If the controlling question here was solely the rate to be applied under the Southern Classification, the carriers' position would be well taken. If the Southern Classification prescribed one rate on "Machinery and Machines" and another on "Cranes or Derricks," the latter rate would apply, as the latter designation more specifically describes the articles under consideration. U. S. v. Gulf Refining Co., 268 U. S. 543, 45 S. Ct. 597, 69 L. Ed. 1082; Pillsbury Flour Mills Co. v. Great Northern Ry. Co. (C. C. A.) 25 F.(2d) 66; American Ry. Express Co. v. Price Bros. (C. C. A.) 54 F.(2d) 67; Western Grain Co. v. St. Louis-San Francisco Ry. Co. (C. C. A. 5) decided February 13, 1932, 56 F.(2d) 160.

This, however, is not a case involving merely a general designation and a specific designation, both of which embrace the article in question, as in the cases last cited. Here, there is a general tariff (the Southern Classification), and an exception thereto. The determinative question is not where these articles fall in the general tariff, but whether they are embraced within the Exception.

■ In determining this question, the entire language of item 16 of the Exception must be weighed. That language is not "Machinery and Machines, *listed as such* in Southern Classification," which is the effect attributed to and urged for the Exception by the carriers, but the language is "Machinery and Machines, *rated sixth class* in Southern Classification * * *." The articles under consideration are admittedly rated as class 6 in the Southern Classification. The articles are unquestionably "machines"—a fact already determined by the Interstate Commerce Commission. 159 I. C. C. 287. See, also, Crawford & McCrimmon Co. v. Gose (Ind. App.) 82 N. E. 984, 985; Green v. American Car Co., 163 Ind. 135, 71 N. E. 268; Denning v. American Steel Co. (C. C. A.) 169 F. 793, 795. The term "machine" includes every mechanical device or combination of mechanical powers and devices to produce a certain effect or result. Corning v. Burden, 56 U. S. (15 How.) 252, 267, 14 L. Ed. 683. Webster's Dictionary refers to a "hoisting machine" in illustrating the definition of the word "machine."

Though there is a more specific designation of these particular machines in the Southern Classification as "Cranes or Derricks," there is no such specific designation in the Exception; the only pertinent item in the Exception being "Machinery and Machines, rated sixth class in Southern Classification." If it had been the intention of the carrier, in adopting the Exception, to confine the class N rate to those articles *listed as* "Machinery and Machines" in the Southern Classification, clearer language should have been employed. Such an intention could have been clearly expressed in the Exception by wording the same "Machinery and Machines, listed as such and rated sixth class in Southern Classification." We must take the language of the Exception as we find it, which is "Machinery and Machines, rated sixth class in Southern Classification."

■ A classification sheet is put before the public for its information. It is supposed to be expressed in plain terms, so that the ordinary business man can understand it, and in connection with the rate sheets can determine for himself what he can lawfully be charged for the transportation. Swift & Co. v. U. S. (C. C. A.) 255 F. 291. The language employed in a tariff must be construed fairly and reasonably, in accordance with the meaning of the words used, and not distorted or extended by forced or strained construction. Western Grain Co. v. St. Louis-San Francisco Ry. Co., decided February 13, 1932 (C. C. A. 5) 56 F.(2d) 160. An ambiguous tariff is construed favorably to the shipper. The carrier's intention as to the applicable rate is pertinent only so far as it is fairly expressed in the language employed. So. Pac. Co. v. Lothrop (C. C. A.) 15 F.(2d) 486.

■ It is not as if the exception under consideration was an integral part of the Southern Classification. If that were true, the specific designation "Cranes or Derricks" would control over the more general designation "Machinery and Machines." The exception is a separate and distinct tariff within itself, the function of which is to carve out and withdraw certain articles from the Southern Classification and to apply a different rate thereto between Jacksonville and local Florida points. The scope and effect of the exception must therefore be found in its own terms. The exception applies a class N rate, for which plaintiff here contends, to all "Machinery and Machines, rated sixth class" in the Southern Classification. Though the exception refers to the Southern Classification, it is not a part thereof and cannot be construed as such. Where one rating is provided in a classification proper, and another in an exception thereto, the exception takes precedence and must be applied in strict conformity with its terms, even though the description in the classification proper is more specific. Kirk & Co. v. B. & O. Ry. Co., 139 I. C. C. 293.

The Interstate Commerce Commission has considered the precise question here involved, not only in this case (159 I. C. C. 287), but in others involving the same tariff and exception, holding the class N rate provided by the exception to be applicable to articles of this general character because they are machines. In Lawrence Construction Co. v. L. & N. R. R. Co., 115 I. C. C. 439, 440, where the article under consideration was a steam road roller, specifically classified by that name in the Southern Classification, the question being whether or not this article was embraced within the item "Machinery and Machines" found in this Exception so as to render applicable the class N rate provided in the Exception, the commission said: "Defendant [carrier] denies that a self-propelling road roller is a machine, pointing out that they are ordinarily referred to as 'steam rollers' rather than 'machines.' For obvious reasons most machines are generally referred to by their individual names, but that does not make them any the less machines. In our opinion a

self-propelling road roller is a machine in an entirely proper and normal sense of the word. Defendant further contends that the rating for 'machinery and machines' in the exception sheet is applicable only to such machines as are rated sixth class and listed in the southern classification under the heading of 'Machinery and machines.' The answer to that contention is that the item in the exception sheet is not so limited either in terms or by reasonable implication." See, also, Buffalo-Springfield Roller Co. v. D. T. & I. R. R. Co., 126 I. C. C. 177; Trenton Chamber of Commerce v. A. C. L. R. R. Co., 139 I. C. C. 322. The commission's decisions in matters relating to tariff construction are regarded by the courts as helpful aids. Empire Ref. Co. v. Davis (D. C.) 6 F. (2d) 305.

When this matter was before the Interstate Commerce Commission (159 I. C. C. 287, 288), the commission said: "In the case before us, defendants offered by their exception [the same exceptive tariff now under consideration] to carry machinery and machines of all kinds rated sixth class in the [Southern] classification at the class N rate. The articles shipped were in fact machines, and it follows, therefore, that the class N rate must be applied."

The court is of the opinion, as was the commission, that the class N rate applies to these shipments between Jacksonville and Pompano, since the articles shipped are "machines," and in the Southern Classification they are rated sixth class.

A verdict is therefore directed for the plaintiff.