**BURLINGTON NORTHERN RAILROAD COMPANY,**
**Plaintiff-Appellant,**

v.

**DEPARTMENT OF PUBLIC SERVICE REGULATION; Public Service Commission; Gordon E. Bollinger; Clyde E. Jarvis; Thomas E. Schneider; John Driscoll; and Howard Ellis, Defendants-Appellees.**

**No. 84–3941.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 18, 1985.

Decided June 21, 1985.

K. Kent Koolen, Burlington Northern R. Co., Billings, Mont., for plaintiff-appellant.

Opal Winebrenner, Helena, Mont., James L. Highsaw, Highsway & Mahoney, Washington, D.C., for defendants-appellees.

Before GOODWIN and SKOPIL, Circuit Judges, and VUKASIN,* District Judge.

GOODWIN, Circuit Judge.

Burlington Northern Railroad Company appeals from a judgment for the Department of Public Service Regulation, in which the district court, on cross motions for summary judgment, upheld as constitutional a Montana statute requiring the railroad to maintain and staff certain freight offices in the state of Montana. We affirm.

Burlington Northern operates in Montana a railroad which is regulated by the Montana Public Service Commission pursuant to statute. Mont.Code Ann. § 69–14–111. The Commission has statutory authority to compel the railroad to maintain and operate adequate train service (both freight and passenger), to provide suitable accommodation for the public and to provide facilities for passengers and freight at all stations. Mont.Code Ann. § 69–14–117. Burlington Northern has a virtual monopoly over rail service in Montana.

The statute compels the railroad to maintain and staff station facilities in towns of at least 1,000 persons.[1] Burlington North-

---

\* The Honorable J.P. Vukasin, Jr., United States District Judge for the Northern District of California, sitting by designation.

1. Mont.Code Ann. § 69–14–202 provides:

(1) Every person, corporation, or association operating a railroad in the state shall maintain and staff facilities for shipment and delivery of freight and shall ship and deliver freight and accommodate passengers in at least one location, preferably the county seat, in each county through which the line of the railway passes and at any point upon the line of such railway where there is a city or town having a population, according to the last federal census, of not less than 1000; provid-

ern has challenged the statute by attacking the regulation promulgated by the Commission. That regulation tracks closely the statutory language:

(1) No railway company now or hereafter operating within the State of Montana shall:

(a) Discontinue a station agent who now is or may hereafter be installed, without first giving notice thereof to and receiving permission from the Public Service Commission of the State of Montana to make such change.

Mont.Admin.R. § 38.4.301.

Burlington Northern filed petitions with the Commission seeking authority to close, discontinue or consolidate freight agency operations at a number of towns in Montana including Browning, Choteau, Whitehall, Big Timber, Columbus, Wibaux, Circle and Terry. Burlington Northern claims that station agents are no longer needed in these towns because many of the duties historically performed by station agents are currently performed in centralized, computerized service centers. Now that the railroad no longer handles less-than-carload freight, freight traffic from these small stations has declined significantly in recent years, so much so that some station agencies rarely handle any freight at all. The railroad alleges that operation of the compelled stations is redundant and economically wasteful.

The Commission dismissed all the petitions without a hearing, taking judicial notice that the population of each of these communities is 1,000 or more. Citing Mont.Code Ann. § 69–14–202, the Commission said it had no authority to consider the petitions and did not, therefore, have to hold a hearing or consider the financial burden of these stations on Burlington Northern before denying its petitions.

Burlington Northern's suit challenges the constitutionality of the statute and of the Commission regulation under the due process clause, the equal protection clause and the commerce clause of the Constitution. The railroad has the burden of proving unconstitutionality under a rationality review; statutes are presumed to be constitutional. *Brown v. Maryland,* 25 U.S. 419, 436, 12 Wheat 419, 436, 6 L.Ed. 678 (1827).

■ The standard for judging the constitutionality of a statute such as Mont.Code Ann. § 69–14–202, which regulates economic activity, is the same under the due process, equal protection or commerce clauses. Legislation will be upheld if it bears a rational relationship to a legitimate state interest. *Williamson v. Lee Optical Co.,* 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955) (due process); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (equal protection); *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 781–82, 65 S.Ct. 1515, 1526–27, 89 L.Ed. 1915 (1945) (commerce).

■ In the context of state regulation of transportation utilities, it is generally agreed that legitimate state interest is defined by the state's need to ensure that carriers serve the public convenience and necessity. *See Chicago, M.St.P. & P.R.R. v. Board of R.R. Comm'rs,* 126 Mont. 568, 255 P.2d 346, 349, *cert. denied,* 346 U.S. 823, 74 S.Ct. 40, 98 L.Ed. 349 (1953). The public convenience and necessity may require a railroad to provide adequate and suitable facilities for the convenience of the communities served by the railroad. *Atchison, T. & S.F.R.R. v. R.R. Comm'n,* 283 U.S. 380, 394–95, 51 S.Ct. 553, 557, 75 L.Ed. 1128 (1931). *See Norfolk & W. Ry. v. Pub. Service Comm'n,* 265 U.S. 70, 74, 44 S.Ct. 439, 440, 68 L.Ed. 904 (1924) (state may require railroads to provide stations to serve railroad customers). The scope of permissible regulation over carriers is comprehensive so long as the regulation is de-

---

ed, however, that this section shall not require the maintenance and staffing of such facilities in any county or at any city or town in which such facilities were not maintained and staffed on July 1, 1969.

(2) Nothing in this section authorizes the discontinuance of any facility presently established in any city, town, or other location having a population of less than 1,000 without a hearing before the public service commission, as provided by law.

signed to serve the public convenience and necessity, *see Chicago, M.St.P. & P.R.R.,* 255 P.2d at 351; such regulation can be effected either directly through legislation or through a public service commission. *See Atchison, T. & S.F.R.R. v. R.R. Comm'n,* 283 U.S. at 394, 51 S.Ct. at 557.

It is clear on the face of the statute that Mont.Code Ann. § 69–14–202, when enacted, was designed to serve the public convenience and necessity and that the statutory and regulatory requirements were related, therefore, to a legitimate state interest. The Montana statute and regulation can withstand constitutional attack today unless the railroad can prove that the regulatory scheme is no longer rationally related to that interest in fostering public convenience and necessity.

Montana has had a statutorily defined population criteria for minimum rail facilities since the turn of the century. *See* Sec. 1, Ch. 26 L. 1905 (codified as R.C.M. § 72–627) (railroads must maintain facilities at any platted townsite along the railroad route with a population of at least 100 persons). In 1969, the Montana legislature revised this section to require railroads to maintain any existing station facilities in towns of at least 1,000 persons. Sec. 1, Ch. 266 L.1969. The Commission cites to hearings in the legislative history which suggest that the legislature considered, but rejected, leaving to Commission discretion the appropriateness of requiring railroad facilities in towns of at least 1,000 population. In part because Burlington Northern has a virtual monopoly on Montana rail service, the legislature apparently wanted to avoid the risk that the railroad itself would exercise undue influence over what constitutes the public convenience and necessity.

### Rationality of Statute and Regulation

Current railroad statistics reveal that the Montana statute today is only imperfectly related to the state's interest in ensuring that towns receive a minimum level of service. But only rationality, not a perfect relation is required. *See Metropolis The-*

*atre Co. v. Chicago,* 228 U.S. 61, 69, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913). In *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), the Supreme Court outlined the analysis which we must follow in determining whether the railroad station requirement is rational. So long as the purposes cited or relied upon by the legislature are legitimate state purposes (as they are here), courts do not challenge the theoretical correctness of the legislature's conclusion or the empirical correlation between staffed railroad facilities and local freight needs. *Id.* at 463, 101 S.Ct. at 723. It is "not our function to weigh evidence ... to determine whether the regulation is sound or appropriate; nor is it our function to pass judgment on its wisdom." *Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 109, 69 S.Ct. 463, 465, 93 L.Ed. 533 (1949).

Whether in fact the public convenience and necessity are benefitted by Mont.Code Ann. § 69–14–202 is not essentially a judicial inquiry; it is enough that the Montana legislature rationally could have decided that public convenience and necessity require these stations to remain open. *Clover Leaf Creamery,* 449 U.S. at 466, 101 S.Ct. at 725. Among other reasons for restraint, this court should be appropriately cautious about deciding questions of local or regional economic policy in two-party litigation. We do not know what intermediate positions might be presented by other interested parties who are not before this court but who may be equally concerned about operation of Burlington Northern freight stations. Questions of economic policy are appropriate issues for the political arena which spill over into the judiciary only when they implicate constitutional rights. We do not, therefore, express any view on the political or economic merits of the Montana statute; Montana is not required to convince this court of the correctness of its legislative judgment that these towns need freight facilities.[2] On

---

**2.** To a court sitting in a major urban center, a town of 1,000 persons may seem inconsequen-

the contrary, Burlington Northern has the burden of showing that the "legislative facts on which [the statute] is apparently based could not reasonably be conceived to be true" by the legislature. *Clover Leaf Creamery,* 449 U.S. at 464, 101 S.Ct. at 724, *quoting Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979). *See In re Lara,* 731 F.2d 1455, 1460 (9th Cir.1984). Burlington Northern has presented no evidence to establish that the Montana legislature, in 1969, acted irrationally when it fixed a statutorily-defined population criteria for minimum rail-station service. Given our deferential standard of review, we cannot conclude that the legislature's 1969 decision was arbitrary, or irrelevant to the statute's purpose of satisfying public convenience and necessity. *See Department of Agriculture v. Moreno,* 413 U.S. 528, 534, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973).[3]

The Supreme Court has been ambivalent on whether changed circumstances can transform a once-rational statute into an irrational law. *Compare Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911) (a court must consider legislative facts at time statute was enacted) *with Leary v. United States,* 395 U.S. 6, 38 n. 68, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) (a statute is subject to constitutional attack if legislative facts upon which statute was based no longer exist). *See also United States v. Carolene*

*Products, Co.,* 304 U.S. 144, 153, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938) (constitutionality of a statute may be attacked on the basis that the facts upon which it is premised have ceased to exist); *Nashville C. & St.L. Ry. v. Walters,* 294 U.S. 405, 415, 55 S.Ct. 486, 488, 79 L.Ed. 949 (1935) ("[a] statute valid when enacted may become invalid by change in the conditions to which it is applied"); *Chastleton Corp. v. Sinclair,* 264 U.S. 543, 547, 44 S.Ct. 405, 406, 68 L.Ed. 841 (1924) ("[a] Court is not at liberty to shut its eyes to an obvious mistake, when the validity of the law depends upon the truth of what is declared"). Even if, as Burlington Northern urges, we consider the rationality of the Montana requirement as of 1985 instead of 1969, Burlington Northern has failed to meet its burden. The railroad has not presented evidence sufficient to persuade the court that changes in rail service in the last 16 years have so drastically altered the need for stations that the bases for the 1969 enactment no longer exist. *See Brotherhood of Locomotive Firemen & Enginemen v. Chicago, R.I. & P.R.R.,* 393 U.S. 129, 135–39, 89 S.Ct. 323, 326–28, 21 L.Ed.2d 289 (1968) (inconclusive evidence of changing railroad safety needs insufficient to conclude that regulation was unconstitutional).

Even under our post-*Lochner* deferential review of state economic regulation, there

---

tially small. Recognizing that the populations of many Montana counties are less than even a small suburb in California, we are particularly wary of substituting our social and economic beliefs for those of the Montana legislature. *See Ferguson v. Skrupa,* 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963). While a population cut-off of 1,000 persons may no longer be wise, we leave that question to the state legislature.

**3.** In construing statutory language, a court must ordinarily consider the circumstances at the time of passage, rather than later interpretations or statements of purpose. *United States v. Wise,* 370 U.S. 405, 414, 82 S.Ct. 1354, 1360, 8 L.Ed.2d 590 (1962). *Accord Murillo v. Bambrick,* 681 F.2d 898, 907–11 (3rd Cir.1982); *United States v. Curtis-Nevada Mines, Inc.,* 611 F.2d

1277, 1280 (9th Cir.1980). *See* 2 Sands, *Sutherland Statutory Construction* § 34.05 (Courts must not abrogate statutes merely on the ground that changed conditions have rendered them superfluous, and will not intrude upon the responsibility of the legislature to clear the statute books of such laws, unless enforcement would be inconsistent with the original purpose underlying the law's enactment.). Where courts have invalidated archaic statutes, there is often an independent constitutional basis for so doing (i.e., a belated recognition that the statutes were unconstitutional as written). *See Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (statutory preference for men as estate administrators); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (anti-miscegenation statute).

remain some constitutional limits.[4] The Commission cannot make regulations for "the furnishing of services or facilities which are obviously unnecessary and which can serve no useful purpose." *Ann Arbor R. v. Michigan Pub. Service Comm'n*, 91 F.Supp. 668, 671 (E.D.Mich.1950). The determining factor, again, is whether the requirement imposed by the Commission is arbitrary and void or essentially reasonable:

> The state, in the exercise of its police power ... may require railroad carriers to provide reasonably adequate and suitable facilities for the convenience of the communities served by them. But its power to regulate is not unlimited. It may not unnecessarily or arbitrarily trammel or interfere with the operation and conduct of railroad properties and business.... [If regulations are challenged as unconstitutional,] the duty of the court in light of the facts in the case [is] to determine whether the regulation is reasonable and valid or essentially unreasonable, arbitrary and void.... [Railroads] may be compelled by state legislation to establish stations at proper places for the convenience of their patrons.

*Norfolk & W. Ry.*, 265 U.S. at 74, 44 S.Ct. at 440.

■ A public service commission cannot reasonably order a railroad to engage in a service which results in economic waste and which is merely incidental to its real obligation to provide transportation service. *Arizona Corp. Comm'n v. Southern Pacific Co.*, 87 Ariz. 310, 350 P.2d 765, 768–69 (1960); *Matter of Missouri P.R.R.*, 93 N.M. 753, 605 P.2d 1152, 1154 (1980). Burlington Northern has presented uncontradicted evidence that operation of the Browning station agency results in a loss. Operation of a service at a loss is not, however,

necessarily dispositive. *Chicago, M.St.P. & P.R.R.*, 255 P.2d at 351. *See Petition of Town of Grenville*, 46 N.M. 3, 119 P.2d 632, 636 (1941); *Matter of Missouri P.R.R.*, 605 P.2d at 1154; *Arizona Corp. Comm'n*, 350 P.2d at 767–68.

■ The evidence Burlington Northern presents about the losses incurred from operating the Browning station is not, standing alone, enough for the court to conclude that the losses are severe enough to threaten the railroad's operations,[5] *cf. In re Chicago, M.St.P. & P.R.R.*, 611 F.2d 662, 668–69 (7th Cir.1979) (railroad facing "imminent cashlessness" may be allowed to abandon services); that a "revolutionary [change] incident to transportation ... in recent years" has made the statute invalid, *Nashville, C. & St.L. Ry. v. Walters*, 294 U.S. 405, 416, 55 S.Ct. 486, 489, 79 L.Ed. 949 (1935); or that the station requirement is "essentially unreasonable, arbitrary and void." *Norfolk & W. Ry.*, 265 U.S. at 74, 44 S.Ct. at 440. We express no opinion on whether further evidence of useless or underused stations would support an inference that the station requirement is unconstitutionally arbitrary.

### Lack of a Hearing

■ Burlington Northern further argues that the regulation is defective because it does not afford the railroad a hearing on its petition. The Montana Public Service Commission, however, did not have discretion to consider the Burlington Northern petitions because the legislature had already made the determination that minimum rail service demands a station in all towns of at least 1,000 persons. *See Chicago, B. & Q.R.R. v. R.R. Comm'n*, 237 U.S. 220, 226, 35 S.Ct. 560, 562, 59 L.Ed. 926 (1915). The Commission role properly can be seen as largely clerical, *see e.g. Dixon v. Love*, 431 U.S. 105, 113–14, 97

---

**4.** *See Lochner v. New York*, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905). *See generally* Bice, *Rationality Analysis in Constitutional Law*, 65 Minn.L.Rev. 1, 33–37 (1980).

**5.** A court must consider more than just the cost of the small station operations in evaluating the

burden on BN of maintaining the Browning station. *See Brooks-Scanlon Co. v. R.R. Comm'n*, 251 U.S. 396, 399, 40 S.Ct. 183, 184, 64 L.Ed. 323 (1920); *Bullock v. R.R. Comm'n of Florida*, 254 U.S. 513, 520–21, 41 S.Ct. 193, 194–95, 65 L.Ed. 380 (1921).

S.Ct. 1723, 1727–28, 52 L.Ed.2d 172 (1977), because its only function is to determine whether or not a community has a population of at least 1,000 persons. The railroad does not challenge the Commission conclusion that all of the communities involved in the petitions had populations of 1,000 or more. The Commission is not constitutionally obligated to provide Burlington Northern with a hearing if such a proceeding would be unnecessary or meaningless. *See United States v. Storer Broadcasting Co.,* 351 U.S. 192, 205, 76 S.Ct. 763, 771, 100 L.Ed. 1081 (1956); *Citizens for Allegan County, Inc. v. FPC,* 414 F.2d 1125, 1128 (D.C.Cir.1969). An irrebutable presumption is not per se unconstitutional and does not demand an individualized hearing so long as it is rational. *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 22–24, 96 S.Ct. 2882, 2895–2897, 49 L.Ed.2d 752 (1976); *Weinberger v. Salfi,* 422 U.S. 749, 768–70, 785, 95 S.Ct. 2457, 2468–69, 2477, 45 L.Ed.2d 522 (1975). Once the legislature has made its determination about which communities should have stations, the Commission is performing its statutory duty in enforcing the letter of the statute. *See Angelina & N.R.R. v. Railroad Comm'n,* 212 S.W. 703, 705 (Tex.Civ.App.1919). If the statute is constitutional, the lack of a hearing does not make it unconstitutional.

■■■ A state does not violate due process by making a legislative determination rather than a particularized inquiry if the subject of the legislation does not interfere with the exercise of fundamental rights. *See Salfi,* 422 U.S. at 768–70, 95 S.Ct. at 2468–69. A statutorily defined irrebutable presumption (*e.g.,* that the public convenience and necessity demand station agencies in all towns of at least 1,000 persons) is not unconstitutional in statutes which regulate economic matters. *Turner Elkhorn Mining Co.,* 428 U.S. at 23–24, 96 S.Ct. at 2896–2897 (1976).

Because the Commission did not have discretion to consider the financial impact on Burlington Northern of station operations, a hearing would have changed nothing. We conclude, therefore, that the Commission did not deny Burlington Northern due process by denying the railroad a hearing. Moreover, for the same reasons that we found that the Montana statute passes constitutional muster, we conclude that the Public Service Commission regulation does not violate due process.

### Equal Protection

Burlington Northern also challenges the Montana statute and Commission regulation on equal protection grounds because similar requirements are not imposed on other common carriers by Montana law. The refutation of this claim is almost self evident.

■■■ Railroads are legitimately treated differently from other carriers in state regulation because "railroads are a special class for which there are and should be special laws." *Chicago & N.W.R.R. v. Bishop,* 390 P.2d 731, 735 (Wyo.1964). *See e.g., Brotherhood of Locomotive Firemen & Enginemen v. Chicago, R.I. & P.R.R.,* 393 U.S. 129, 89 S.Ct. 323, 21 L.Ed.2d 289 (1968) (no equal protection violation for state to attack safety problems in railroad industry without regulating other competing industries); *W. Virginia Motor Truck Ass'n v. Pub. Service Comm'n,* 123 F.Supp. 206 (S.D.W.Va.), *aff'd* 348 U.S. 881, 75 S.Ct. 125, 99 L.Ed. 693 (1954) (rejecting equal protection challenge by motor carriers against regulation of railroad). The courts will defer to a legislative classification if the state interest is unquestionably legitimate and the classification is related to the statutory purpose. *Texaco, Inc. v. Short,* 454 U.S. 516, 529–30, 538–40, 102 S.Ct. 781, 792–93, 796–98, 70 L.Ed.2d 738 (1982). Where a regulation or statute affects only economic and not fundamental interests, and concerns an issue of intense local importance, the state is free to create a classification scheme so long as that classification has a relation to the purpose for which it is made and does not result in invidious discrimination. *Railway Express Agency,* 336 U.S. at 110, 69 S.Ct. at 465. We reject the railroad's assertion that the Commission must show compelling government interest to treat railroads differently

than it treats other carriers. *See Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

On an issue as intensely local as the location and staffing of rail freight stations, we must allow the Montana legislature wide latitude in choosing how to regulate the railroads. *Railway Express Agency,* 336 U.S. at 109, 69 S.Ct. at 465. Because the Montana statute passes muster under the due process challenge as rationally related to the public convenience and necessity, and because railroads are legitimately treated as a special class of common carriers, the statute also passes equal protection review.

### Burden on Interstate Commerce

Finally, Burlington Northern challenges the statute and regulation as an undue burden on interstate commerce in violation of the commerce clause.

Although the commerce clause confers on the federal government the power to regulate interstate commerce, the Constitution does not exclude all state power to regulate commerce. *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 766, 65 S.Ct. 1515, 1518, 89 L.Ed. 1915 (1945). The limits on state regulation of commerce "necessarily [involve] a sensitive consideration of the weight and nature of the state regulatory concern in light of the extent of the burden imposed on the course of interstate commerce." *Raymond Motor Transp., Inc. v. Rice,* 434 U.S. 429, 441, 98 S.Ct. 787, 794, 54 L.Ed.2d 664 (1978). Particularly in matters of local concern, the states may regulate commerce even if there is an incidental effect on interstate commerce. *Southern Pacific Co. v. Arizona,* 325 U.S. at 767, 65 S.Ct. at 1519. When the regulation of "matters of local concern is local in character and effect and its impact on the national commerce does not seriously interfere with its operation ... such regulation has generally been held to be within state authority." *Id.* at 767, 65 S.Ct. at 1519; *See Railway Express Agency,* 336 U.S. at 111, 69 S.Ct. at 466 (statute can withstand constitutional attack even if it materially interferes with interstate commerce).

The most cogent argument that the Montana statute burdens commerce is that egregious economic waste adversely affects both railroad operating efficiency and rates paid by the public. While the Commerce Clause does not permit a state to cripple the interstate operations of a common carrier merely to infuse railroad money into the local economy, the record on summary judgment in this case falls short of showing the kind of burden that would justify striking down the statute.

Had Montana restricted the frequency and service of interstate trains, a restraint on interstate commerce might be found. *Chicago, B. & O.R.R.,* 237 U.S. at 231, 35 S.Ct. at 564. The claims by Burlington Northern that operation of the Browning station results in a loss to the company does not, without more, suggest that the Montana statute "impede[s] substantially the free flow of commerce from state to state" or that the location and staffing of local rail stations, "because of the need of national uniformity," can only be regulated by the national government. *Southern Pacific Co.,* 325 U.S. at 767, 65 S.Ct. at 1519. It is clear, therefore, that Montana's regulation of the location of local station agencies is an intensely local matter, with, at worst, a minimal effect upon interstate commerce.

Burlington Northern has failed to overcome the presumption of constitutionality by showing that the Montana statute or regulation are not rationally related to the state's legitimate interest in ensuring a minimum level of rail service. Accordingly, the judgment of the district court is affirmed.